FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

# United States District Court

### FOR THE

## Southern District of Iowa

## Central Division



### COMPLAINT FILED UNDER SEAL

## [IASFCA1]

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

# UNITED STATES DISTRICT COURT

### FOR THE

## SOUTHERN DISTRICT OF IOWA

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Christopher Moritz, THE STATES of CALIFORNIA, CONNECTICUT, GEORGIA, ILLINOIS, IOWA, KENTUCKY, MINNESOTA, MONTANA, NEW YORK, *ex rel.*, Christopher Moritz, Christopher Moritz on behalf of C@GO DOE, Christopher Moritz on behalf of C@GO IaS and Christopher Moritz, Individually, | Case NO. |
| | **COMPLAINT** |
| | **FILED UNDER SEAL PURSUANT TO :** 31 U.S.C. §§ 3729-32 |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | ***DO NOT ENTER ON PACER*** |
| INFINITE CAMPUS, INC; | |
| SHOUTPOINT HOLDINGS, INC.; | ***DO NOT PLACE IN PRESS BOX*** |
| SHOUTPOINT, INC.; | |
| SP LICENSES, INC.; | ***DO NOT COPY ON ANY DEVICE THAT STORES A DIGITAL IMAGE TO A SERVER OR NETWORK*** |
| TERAMESH NETWORKS, INC.; | |
| VOXOLOGY CARRIER SERVICES INC.; | |
| VOXOLOGY, INC. ; | |
| and any of their agents, representatives, 3rd parties, or partnerships, or any entity that participated in these matters with the Defendants, INCLUSIVE, | |
| Defendants. | |

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## FALSE CLAIMS ACT COMPLAINT "QUI TAM"

1.    The United States of America, by and through *qui tam* Relator, Christopher Moritz, brings this action under 31 U.S.C. §§ 3729-32 (The "False Claims Act") to recover from Infinite Campus, Inc., Shoutpoint Holdings, Inc., Shoutpoint, Inc., Voxology, Inc., Voxology Carrier Services, Inc., for all damages, penalties, and other remedies available under the False Claims Act on behalf of the UNITED STATES of AMERICA, THE STATES, C@GO DOE, C@GO IaS and himself.

2.    This is a *qui tam* action brought in the name of both the United States of America, the States and/or Commonwealths of  California, Connecticut, Georgia, Illinois, Iowa, Kentucky, Minnesota, Montana, New York ("the States") by and through the relator, Christopher Moritz, to recover treble damages and civil penalties arising from false statements and claims made or caused to be made by Defendants Infinite Campus, Inc. ("IC" or "Campus"  or "OLR"),  Shoutpoint, Inc. ("Shoutpoint" or "SP" or "TelWeb" or "TW"), Shoutpoint Holdings, Inc. ("SPH" or "Holdings Company" or "NDS"), Voxology Carrier Services, Inc. ("VCS" or "VOX" or "Voxology"), to the United States Government ("United States"), and the States, (collectively the "Government"), in violation of the Federal False Claims Act, (31 U.S.C. §§ 3729-32), and the following State Statutes (hereinafter referred to collectively as, "State Statutes"); California False Claims and Reporting Act (Cal. Gov't Code § 12650 *et seq.*) , Connecticut False Claims Act, (Conn. Gen. Stat. §§ 17b-301a-17b-301p), Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. §§ 49-4-168 *et seq.* & § 23-3-120 *et seq.*), Illinois False Claims Act (810 Ill. Comp. Stat. § 740 ILCS 175/1), Iowa False

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

Claims Act (Iowa Code § 685.1), Kentucky False Claims Statute Policy (Ky. Rev. Stat. Ann. §§ 205.8451-205.8483),  Minnesota False Claims Act (Minn. Stat. § 15C.01),  Montana False Claims Act (Mont. Code Ann. § 17-8-401), New York False Claims Act (N.Y. State Fin. Law §§ 187 *et seq.*)

## PARTIES

3.     The Plaintiff is The United States of America.

4.     Relator Christopher Moritz, is a citizen of the United States and a resident of the State of Iowa. He brings this action on his own behalf and on behalf of his minor children affected by the Defendants actions and on behalf of the government pursuant to 31 U.S.C. § 3730(b)(1), and each of the States corresponding acts as set forth herein.

5.     Relator is the original source and has direct, personal, and independent knowledge of the information upon which the allegations and assertions herein are based.

6.     Defendant Infinite Campus, Inc. is a Minnesota corporation doing business in Des Moines, Iowa and may be served with process through its registered agent National Registered Agents, Inc., 400 E Court Ave, Des Moines, IA 50309. Service of suit is stayed pursuant to 31 U.S.C. § 3730(b)(2).

7.     Defendant  Shoutpoint, Inc., a division of Shoutpoint Holdings, Inc., is a Delaware corporation, doing business in Des Moines, Iowa and Newport Beach California  and may be served with process through its registered agent CT Corporation System, 818 West 7th St, Suite 930 Los Angeles CA 90017. Service of suit is stayed pursuant to 31 U.S.C. § 3730(b)(2).

8.     Defendant Voxology Carrier Services, Inc., a division of Shoutpoint Holdings, Inc., is a California corporation doing business in Des Moines, Iowa and may be served with

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

process through its registered agent National Registered Agents, Inc., 400E Court Ave, Des Moines, IA 50309. Service of suit is stayed pursuant to 31 U.S.C. § 3730(b)(2).

9.     Defendant Shoutpoint Holdings, Inc., is a California holding company doing business in Des Moines, Iowa and multiple cities where their branch offices are located and may be served with process through its registered agent CT Corporation System, 818 West 7th St, Suite 930 Los Angeles CA 90017. Service of suit is stayed pursuant to 31 U.S.C. § 3730(b)(2).

10.     The Defendants are known for having hundreds of shell companies so it is unclear if SP Licenses, Inc. and Teramesh Networks, Inc., might currently be restructuring their divisions or perhaps merged with some other unknown entity that they have on paper. Shoutpoint Holdings, Inc. is the holding company for their various corporations and remains operational, since it is unclear on which corporate entity they are using for several related other violations, SP, SPH, Shoutpoint or TelWeb refers to the same group of businesses.

## IAS TIMELINE OF EVENTS

11.     As mentioned above, Relator has personal first-hand knowledge and is the original source of the information disclosed in this complaint because the Relator has children that have been enrolled in school districts that use the Infinite Campus software.

12.     This complaint initially began on the morning of August 16, 2019 when the Relator realized his children would be starting school in less than 2 weeks, and that he had yet to receive any type of schedule from the children's schools informing him of their class schedule for the fall semester.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

13.     The Relator contacted one of the schools to inquire about their course schedule and was informed by the school that his children were not enrolled in their school district any longer and had transferred out of district.

14.     The Relator hadn't received any communication from the school district about there even being a transfer request so was even more baffled when the school administrator stated that they could not provide the Relator with the name of the new district that they transferred to.

15.     After calling several surrounding area school districts the Relator was told by one school secretary that they could not confirm verbally if the children were enrolled in their district because they are only allowed to release that information to the parents and/or legal guardians of their students.

16.     The school secretary then asked the Relator to email a copy of his driver's license and some type of documents to show that he was the father of his children.

17.     Several hours later the district registrar communicated to the Relator that his children were enrolled in their district, but since the Relator was not listed as the father of his children on the registration, the district was not permitted to release any of his children's school records.

18.     After several days of communication with the district, the Relator started researching how these issues could have even happened in the first place so that then corrections to the children's educational records could be made.

19.     After speaking to Iowa Department of Education (IDoE), the Relator was informed that due to complexities of the situation, the Relator had the option of dual enrolling the children in their original school district until the courts could intervene with a decision.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

20.    The Relator had already researched procedures and since Infinite Campus was used by both districts, while enrolling the children using the Online Registration (OLR), the Relator took screen shots of each of the steps through the process and evaluated the different scripts that Infinite Campus used during the process.

21.    This is when the Relator discovered that all of the personal private information about himself and his children into the fields of the software was not only going into the school district's server, but there also was a split in the information and it appeared to be going out through Google Analytics as well.

22.    After capturing images of this happening within the code throughout the process, the Relator then went to the new district that the children were supposedly registered with to see if the other district did the same thing so that the two districts could be compared to see how the children could have been transferred without notifying the Relator.

23.    After not being able to resolve the matter completely with the school district, and after being advised that Court intervention would be the only way to completely resolve all the open issues, the Relator started putting together this FCA in September 2019. Halfway through the case preparation another educational advisor suggested that perhaps it would be easier to file a whistleblower complaint with the Office of Inspector General with the U.S. Department of Education.

24.    The Relator filed a confidential complaint with the Office of Inspector General with the U.S. Department of Education to disclose the information that the Relator had uncovered in mid-October 2019 verbally and the OIG investigator provided their email address to submit evidence to. In the initial verbal complaint the Relator mentioned that the FCA had already been started. The Relator mentioned a few relevant topics in his email that he sent to the investigator on October 17, 2019:

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

*This first batch provides the proof, the communications between all parties with highlighted parts of the communications that reference all the points that I brought up with you yesterday so that you can see what education officials and their legal counsel have been stating to me that this can only be resolved with a Court order..*

*I don't have your phone number so I couldn't call you. The next batch will contain all my research notes, Iowa codes, US Codes and all the case prep for the FCA.. But additionally I'll send you the 1.5 months of analysis on 470+ webpages of internal code that I put together that connects all the safeguards, FERPA, e-CFR, etc regulations so you can see how what I discovered affects the other 7+million student records in Infinite Campus databases.. I only found a few of audits on Infinite Campus but they don't have any SOC2 or SOC3 reports that I can find anywhere.. I'll send you a second email from one of my other email accounts with the password to zip files so they come from different accounts..*

25.     Before the second batch of files were sent, the OIG investigator informed the Relator that they only had jurisdiction for certain issues related to the educational issues only and so they would not be able to resolve everything within their office. The Relator then continued with investigation for FCA and related matters.

26.     Up until the Spring of 2020, the Relator was only focusing on Shoutpoint and Infinite Campus, but the Relator noticed that in multiple source code pages, the scripts would have an outbound path to "TelWeb".

27.     Covid arrived in the Spring of 2020 and additional issues were compounded and added to the list, just the same as the rest of the world.

28.     After researching various scripts within the source code, the Relator came across references to "TelWeb" as being the hidden entity behind the billions of RoboCalls that the FTC prosecuted from 2014-2018.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

29.    After spending a few weeks going through the depositions from the previous FTC

cases, the Relator noticed that several of the keywords and terms that were used by the

TelWeb people were connected to the source code that the IaS investigation was tracking.



30.    The screenshot above is provided for clarification and to show that June 25, 2020

was the first day of discovering the 2014-2018 FTC/TelWeb cases, which are also

confirmed by the timestamps of numerous evaluations that were published prior to June

2020 combined together to provide additional verification showing that the Relator had

knowledge of TelWeb prior to discovering the FTC/TelWeb cases. The depositions provided

confirmation to facts already discovered during the IaS investigation that originated from

tracking the source code of the TelWeb entities. In short, the FTC cases were not able to

uncover the actual source of where the bad actors were receiving their data from.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## RELEVANT TESTIMONY ON RECORD

*James Christiano, et al. Case Summary*
https://www.ftc.gov/enforcement/cases-proceedings/162-3124/james-christiano-et-al-netdotsolutions-inc
*FTC v. Christiano     Case 8:18-cv-00936-DOC-AGR*
https://www.ftc.gov/system/files/documents/cases/61_-_corrected_app_for_dj.pdf
*FTC v. Aaron Michael Jones  Case 8:17-cv-00058-DOC-JCG  (has Christiano **Depo**)*
 https://www.ftc.gov/system/files/documents/cases/allorey_-_motion_for_default_judgment_-_with_attachments_4-10-17.pdf
*special appreciation to Ian L. Barlow and James E. Evans with FTC for their thorough*
*investigational hearings in the previous 2014-2018 cases*

31.     Since James Brian Christiano is listed as the President and majority owner of

Shoutpoint Holdings and the numerous other TelWeb companies affiliated with SPH and

TelWeb, some of his testimony on record is provided in support of the assertions made

herein and the additional factual evidence uncovered during the IaS investigation.

32.     The TelWeb RoboCaller cases above that the FTC prosecuted in 2014-2018 were

centered around the billions of RoboCalls that Christiano's companies made to millions of

consumers. Section 5 of the FTC Act 15 U.S.C. Section 45, in violation of telemarketing

sales rule, 16 C.F.R. Part 310.  Ian Barlow and James Evans questioned and prosecuted

over a dozen people that worked for the various TelWeb companies. Nearly every person

was asked in their investigational hearing "where is source of the data procured from?" , yet

no one actually reveled or disclosed to Barlow and Evans the actual process of how the data

was procured. Each person would only give vague generic responses, so even Ian Barlow

was not aware of the actual source until we recently disclosed the information to him.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

33.    Appendix F has the full statements and citations of each person's testimony, the following are brief summaries of relevant testimony from TelWeb owners and employees, full quotes and citations are found in Appendix F.

34.    James Christiano provided testimony in his 09/16/2015 hearing under oath and stated that he was the president of ShoutPoint, NetDotSolutions (NDS), TeraMESH, VoiceINC.com, that his companies do a billion Robocalls a year, that he has a wireless number database that is "the source data for the ported numbers", that he might possibly have a company that is a CLEC, that NDS might be a telephone carrier, that ShoutPoint is an Interconnected VoIP provider to certain customers so in his opinion Shoutpoint is considered as a carrier, that a few companies of his companies are considered as carriers because he registers the companies with the FCC using form 499 and because they pay USF taxes, and because SP "have" to operate as an interconnected VoIP provider so that means they have to follow some rules, that VoiceINC falls within being two or three tier VoIP provider, that most of their selling is to a wholesaler, and that BinFone does a mix of business so host of mix of wholesale and retail, that the carriers that they do business with are comparable to other telco companies, and lastly, that he has signed service orders for VoIP terminations.

35.    On October 19,2016, Houston Fraley testified that NetDotSolutions (NDS), Shoutpoint and Telweb are three names that are interchangeable in the market when referencing the dialer company, that the support email for the NDS, TelWeb dialer is support@shoutpoint.com

36.    Tyler Hall testified in his October 14, 2016 hearing that Local Lighthouse was located in the same building and same suite on 15991 Red Hill, that they would use the LeadTrac system to build a new portion of it by having a new account inside that system

with the track to purposely keep them separate, that the dialing platform is called TelWeb,
but it was also known by TelWeb, TelServ, S-E-R-V, Shoutpoint, NetDotSolutions or NDS,
that thy also had offices at 2975 Red Hill just up the street.

37.    Aaron Michael Jones testified in his October 1, 2015 hearing that he and Steve
Stansbury would procure data for predictive dialing campaigns from "different sources"
scraped off the internet, that he had an exclusive agreement with Christiano to use
Christiano's TelWeb platform for dialing RoboCalls, that Christiano's business partner
Patrick Etzel wrote the TelWeb software, that TelWeb refers other clients to him if they need
dialing services through TelWeb so that TelWeb doesn't provide the service directly, that
TelWeb does direct business with school districts and political campaigns, that he is one of
the top Robodialers in the market, that he has a master account on TelWeb on the dialer
side that allows him to log into TelWeb and look at all the dialer data being processed
through TelWeb as well as view and listen to calls and remove client accounts if he chooses,
that they mislead other employees into believing that TelWeb banned him but yet he
admitted to logging into TelWeb the day before his hearing, that Richard has a master
account on the license side so any clients that Richard sets up underneath Richard's
account, he can't see who they are nor remove them, that Dean Austin had a company
called Zone 7 Communications on TelWeb and Dean would wire money, that he logged into
TelWeb and was listening to one of Dean's client's recordings that was selling pain crème so
he kicked Dean off of the TelWeb platform after listening to a few phone calls made by the
pain crème client, that he was the "gatekeeper" of TelWeb on the dialer side so he had
resellers underneath his account each having their own clients so he was the primary
person at the top of the pyramid, that TelWeb has 25,000 lines to use for during the
political season for political conference calls and town halls with tens of thousands of

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

people on a single conference call, that TelWeb uses those lines during the year for school district calling to maintain the lines so that they the lines are always available for political season, that Cristiano and Patrick have one of the only dialers on the market, that the TelWeb server is located at One Wilshire, and lastly that TelWeb uses lots of different carriers to source their lines from.

38.    On September 8, 2016 Eric Michael Oakley testified that Jaimie Christiano is the owner of TelWeb, and that the dialing companies all operate out of the either 15991 Red Hill as well as 2975 Red Hill.

39.    Richard Paik testified on August 18, 2016 that TelWeb uses ANI companies named EngageTel and Omega as a source of phone numbers to put in the caller I.D. for their voice broadcasting or predictive dialing, that TelWeb has 80,000 lines available to use on political dials or emergency services to make voice broadcasting calls, that Mike Jones uses TelWeb's voice broadcasting for telemarketing, that TelWeb is also known by the names NetDotSolutions (**NDS**), **Voice, Inc.**, **Teramesh** and **Shoutpoint** because they own and manage TelWeb and he sends money to all of those companies for TelWeb services, that Mike Jones sells data to dialing clients, that dialing clients upload their own data into TelWeb freely, that TelWeb is accessed through multiple domains including one called MXS as well as Shoutpoint, that Shoutpoint is the domain that he goes through to access the predictive dialing platform, that Dean Austin and Justin Ramsey do money transfers between the various shell companies that they receive from clients, that Mike Jones only uses the TelWeb platform for all of his RoboCalls, and that TelWeb and Christiano have full knowledge that Mike Jones use their TelWeb platform to place calls with prerecorded messages, and lastly that the Auto Warranty company using TelWeb

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

had their offices in the same complex located at **15941 Red Hill Avenue**, but only received mail through a P.O. Box.

## JURISDICTION

40.     This is a claim brought under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, arising from Defendants' false and/or fraudulent claims for payment from the United States Government that were paid by and through its funding of technology programs at various school districts and schools located that are located in various states of the United States. This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1345, 31 U.S.C. § 3730(b), and its general equitable jurisdiction.

41.     This court has supplemental jurisdiction over the Iowa False Claims Act and the other State False Claims Act claims pursuant to 28 U.S.C. § 1367.

42.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit or investigation, or from the news media.

43.     To the extent that there has been a public disclosure unknown to the relator Moritz, he is the original source of the information under Federal False Claims Act, (31 U.S.C. §§ 3729-32) and the State Statutes.

44.     Relator initially disclosed some of the information herein to the Office of Inspector General in Department of Education in November 2019 under whistleblower laws for confidential information as the original source of the information herein. Due to the complexities of related matters, the OIG investigator informed the relator that OIG jurisdiction was limited strictly to the education matters.

45.     Citations to public sources are in support of the original source information and assertions being made herein. While some of the facts cited herein are from public sources,

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

many have yet to be publicly disclosed. Moreover, Relator is the original source of the information disclosed herein and such information being disclosed brings light to any supporting information cited from public sources.

46.     Relator has direct and independent knowledge of the information on which these allegations are based. Relator has provided or is concurrently providing to the United States Attorney that has previously prosecuted the TelWeb defendants, and the Attorney Generals of the States/Commonwealths of the States, statements summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. § 3730(b)(2) and relevant sections of the respective and aforementioned States Statutes. This disclosure statement is supported by clear and competent evidence documenting Relator's first-hand knowledge of defendants' conduct described herein.

47.     This court has personal jurisdiction over defendants under 31 U.S.C. § 3732(a) because Defendants have made, used, or caused to be made or used, false or fraudulent records in this District to get false or fraudulent claims paid or approved by the Government. Defendants can be found in, are authorized to transact business in, and are now transacting business in this District.

## VENUE

48.     Venue is proper in this District under 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because Defendants transact business within this district.

## FACTS

### GOVERNING LAWS, REGULATIONS, CODES & AGENCIES

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

A. **The False Claims Act**

49.     Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act.

50.     The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

51.     The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)9A), (B), (G) (emphasis added). Any person found to have violated these provisions is liable for a civil penalty of up to $11,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

52.     The FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C § 3729(b)(1).

53.     The FCA defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or other recipient, if the money

or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C § 3729(b)(2)(A).

54.     The FCA empowers private persons having information about a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C § 3730(b).


B. **The E-rate Program.**

55.     In 1996, Congress mandated that schools and libraries receive discounted telecommunications services through the newly codified Universal Service Fund. In turn, the Federal Communications Commission (the "FCC") proceeded to implement that mandate, commonly known today as the E-rate program, through a private non-profit corporation known as the Universal Service Administration Company (the "USAC"). Within USAC, the Schools and Libraries Division ("SLD") is responsible for the daily administration of the E-rate program.

56.     Universal Service defines an "Interconnected VoIP Provider" is an entity that provides a service that (i) Enables real-time, two-way voice communications; (ii) Requires a broadband connection from the user's location; (iii) Requires internet protocol-compatible customer premises equipment(CPE); and (iv) Permits users generally to receive calls that

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

originate on the public switched telephone network and to terminate calls to the public switched telephone network. Notwithstanding the foregoing, solely for purposes of compliance with the Commission's 911 obligations, an interconnected VoIP service includes a service that fulfills each of paragraphs (1)(i) through (iii) of this definition and permits users generally to terminate calls to the public switched telephone network.

57.     The disposition of a civil action by any court of competent jurisdiction, whether entered by verdict, decision, settlement with admission of liability, stipulation, or otherwise creating a civil liability for the wrongful acts complained of, or a final determination of liability under the Program Fraud Civil Remedies Act of 1988. 47 CFR § 54.8(a)(2)

58.     Causes for suspension and debarment are conviction of or civil judgment for attempt or commission of criminal fraud, theft, embezzlement, forgery, bribery, falsification or destruction of records, making false statements, receiving stolen property, making false claims, obstruction of justice and other fraud or criminal offense arising out of activities associated with or related to the schools and libraries support mechanism, the high-cost support mechanism, the rural health care support mechanism, and the low-income support mechanism. 47 CFR § 54.8(c)

59.     Effect of suspension and debarment. Unless otherwise ordered, any persons suspended or debarred shall be excluded from activities associated with or related to the schools and libraries support mechanism, the high-cost support mechanism, the rural health care support mechanism, and the low-income support mechanism. Suspension and debarment of a person other than an individual constitutes suspension and debarment of all divisions and/or other organizational elements from participation in the program for the suspension and debarment period, unless the notice of suspension and proposed debarment is limited by its terms to one or more specifically identified individuals,

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

divisions, or other organizational elements or to specific types of transactions. 47 CFR §
54.8(d)

60.    Time period for debarment. A debarred person shall be prohibited from
involvement with the schools and libraries support mechanism for three (3) years from the
date of debarment. The Commission may, if necessary to protect the public interest, set a
longer period of debarment or extend the existing period of debarment. If multiple
convictions or judgments have been rendered, the Commission shall determine based on
the facts before it whether debarments shall run concurrently or consecutively.  47 CFR §
54.8(g)

61.    USF support restriction on the use of funds states, "NO universal service support
may be used to purchase, obtain, maintain, improve, modify, or otherwise support any
equipment or services produced or provided by any company posing a national security
threat to the integrity of communications networks or the communications supply chain."
47 CFR § 54.9(a)

62.    When the Public Safety and Homeland Security Bureau (PSHSB) determines,
either sua sponte or in response to a petition from an outside party, that a company poses
a national security threat to the integrity of communications networks or the
communications supply chain, PSHSB shall issue a public notice advising that such
designation has been proposed as well as the basis for such designation. 47 CFR § 54.9(a)

63.    Each designated interstate carrier with operating revenues for the preceding year
that equal or exceed the indexed revenue threshold shall file, no later than April 1 of each
year, a report showing for the previous calendar year its revenues, expenses, taxes, plant in
service, other investments and depreciation reserves, and such other data as are required
by the Commission, on computer media prescribed by the Commission. The total operating

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

results shall be allocated between regulated and nonregulated operations, and the regulated data shall be further divided into the following categories: State and interstate, and the interstate will be further divided into common line, traffic sensitive access, special access, and nonaccess. 47 CFR § 43.21

## PUBLISHED FACTS AND GOVERNMENT RECORDS

64.   Infinite Campus is a software company with their headquarters in Blaine, Minnesota and over 30 branch offices around the United States.

65.   Infinite Campus website states that the company services 7.8 million students, over 2,000 school districts, in 45 States.

66.   Infinite Campus issued a press release in 2009 announcing their "new version of its student information system, District Edition 2009.2, which integrates emergency notification. Powered by ShoutPoint, a 3rd party VoIP service, Campus Messenger with Voice leverages system data that already exists in the District Edition to distribute large volume calls.... The company said ShoutPoint telephony service may be eligible for federal E-rate funding."

67.   Infinite Campus website publishes descriptions for specific features and/or enhanced options  that integrate ShoutPoint.

68.   Infinite Campus website published in 2020 one feature identified as "*Shoutpoint Voice Recorder*" which states: "The Shoutpoint Voice Recorder is a tool made available by Shoutpoint... The Shoutpoint  Voice Recorder allows Campus users to record and save voice messages without recording software. These recorded messages, saved as WAV files, may then be uploaded to voice message templates existing in Campus... USING THE

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

SHOUTPOINT VOICE RECORDER.. ShoutPoint Voice Recorder URL

http:campus01.remotedialin.com/**TelWeb**/temp/voicefile_recorder.jsp"

# Using the Shoutpoint Voice Recorder

To record a voice message using the Shoutpoint Voice Recorder tool, complete the following steps.

1.  Open the following link in an internet browser window or tab:

    ShoutPoint Voice Recorder URL
    http://campus01.remotedialin.com/**TelWeb**/temp/voicefile_recorder.jsp

69.    Infinite Campus website published in 2020 another feature "*Messenger with Voice*

– *Setup and Details*" which provide several informative write-ups:

# Messenger with Voice Technical Details

Campus Messenger with Voice has merged with Shoutpoint, a third-party VoIP (Voice-over Internet Protocol)
service designed to efficiently route a large volume of calls. Shoutpoint provides a voice-over internet protocol
service that can deliver daily messages (*e.g.*, student behavior, attendance, grades), high priority messages,
general notifications from the school/district, internal staff messages, etc. In addition, Shoutpoint also allows for
rapid delivery of messages through Emergency Messenger.

"*Campus Messenger with Voice has merged with Shoutpoint...*"

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## Shoutpoint Details

When a voice message is created in Campus and sent to Shoutpoint for delivery, Shoutpoint takes over. It dials the Campus-provided phone numbers and attempts to deliver the voice message. No phone or dialer hardware is necessary, as Shoutpoint handles the entire dialing and delivery process.

Shoutpoint has two domestic call centers, one in California and another in New York. Database servers dedicated entirely to Campus messaging exist at both locations. In the event that a Shoutpoint server goes offline during a vital messaging period, the dedicated servers allow fail-over protection and ensure message delivery.

*...is <u>created in</u> Campus and <u>sent to</u> Shoutpoint for delivery,*
*Shoutpoint <u>takes over</u>... It dials the Campus-provided phone numbers...*
*...No phone or dialer **hardware** is necessary..*

"*...has **two** domestic call centers, one in **California** and another in **New York**...* "

70.     The statement "Shoutpoint takes over" is a misrepresentation of a material fact because TelWeb has already captured the information and converted it into a hidden string of information using a variety of hidden scripts and color sequencing that travels independent of the file that the school administrator believes they are sending as a secure communication. TelWeb captures the area around the mouse pointer each time a field is selected. The Big Yellow Ring is the capture "padding" area around the flash of the Purple Dot which is actually a dynamic gradient function within the script for capturing, parsing, converting, and processing the information that is cached by mouse  and cursor movement, but not stored as text data. Refer to Appendix B, which includes an overview of the IaS ICSPM6Y Evaluation, which is a frame by frame walk through of a video tutorial that was originally made by an administrator of a school district using Infinite Campus/SP/TelWeb.

71.     Infinite Campus has published on their website that Messenger uses the TelWeb platform to communicate with students and parents.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

72.    Infinite Campus obtains funding from the Government for the services Infinite

Campus provides to educational institutions, schools and school districts.

73.    ShoutPoint has published on their website as one of their benefits that their

**INTERCONNECTED** VoIP services are eligible for E-rate funding.

www.shoutpoint.com/e-rate-funding/

"Shoutpoint for Schools **interconnected VoIP** is **eligible for E-rate funding** support.
(Shoutpoint's Service Provider Identification Number ("SPIN") is 143032646.) E-rate
is a program operating under FCC rules that provides discounted services to eligible
schools and libraries. The program is administered by the Universal Service
Administrative Company (USAC), a not-for-profit corporation, and more particularly
its Schools and Libraries Division ("SLD")... Shoutpoint has commissioned an opinion
from **an expert** in E-rate eligibility, who has **definitively** indicated that the Shoutpoint
**interconnected VoIP** service for schools and other landline dial tone services can
receive E-rate funding when connected to any of the above components. "

74.    Shoutpoint openly publishes on their website that the company provides

**Interconnected** VoIP services that are eligible for federal E-rate funding.

75.    Shoutpoint, Inc. 2019 FCC form **499** states that their Principal Communications

Type is identified as a **Non-Interconnected** VoIP (NVOIP), and their Holding Company is

**NDS-SP Holdings, Inc.**, Jurisdictions in which the Filing Entity Provides

Telecommunications Services: Alabama, American Samoa, Arizona, Arkansas, California,

Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Guam, Hawaii,

Idaho, Illinois, Indiana, Iowa, Johnston Atoll, Kansas, Kentucky, Louisiana, Maine,

Maryland, Massachusetts, Michigan, Midway Atoll, Minnesota, Mississippi, Missouri,

Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North

Carolina, North Dakota, Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania,

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, US Virgin Islands, Vermont, Virginia, Wake Island, Washington, West Virginia, Wisconsin, Wyoming.

76.     Shoutpoint, Inc. 2020 FCC form **499** also states that their Principal Communications Type is identified as a **Non**-Interconnected VoIP (NVOIP), and their Holding Company is **Shoutpoint Holdings, Inc.**, CEO: James Christiano, Chairman: Patrick Etzel, Jurisdictions in which the Filing Entity Provides Telecommunications Services: Alabama, California, District of Columbia, Illinois, Kansas, Ohio, Texas, Virginia.

77.     Voxology Carrier Services, Inc. 2020 FCC is also identified by the FCC as a **Non**-Interconnected VoIP (NVOIP), Holding Company is Shoutpoint Holdings Inc., Other Names: Binfone, VoiceInc.com, CEO: Justin Newman, Chairman: Harry Kipp, Jurisdictions: California, Florida, Georgia, Maryland, Missouri, Ohio, Tennessee, Texas, Virginia.

78.     Voxology Carrier Services, Inc.   Iowa SOS 03/18/2020 @ 3:04PM  Corp #: 407244 Cert No: A20407244  BinFone Telecom  Iowa 2020 Biennial Report for a Foreign Corporation; Reg Agent:  National Registered Agents, Inc.  400 E COURT AVE  Des Moines IA 50309; Officers: President/Secretary/ Treasurer/ Director: James Christiano; Director Patrick Etzel

79.     Baltimore-Washington Telephone Company (BWT) 2020  FCC 499 is identified as a CAP/LEC, **USF: NO**, Holding Company is Shoutpoint Holdings, Inc., CEO: Justin Newman, Chairman: Harry Kipp, Jurisdiction: California, Maryland, Nevada, New York.

80.     **NDS** Technologies LLC 2020 FCC **499** is identified as CAP/LEC, **USF: NO**, Holding Company: **NONE**, CEO: James Christiano.

81.     2014 FCC Public Notice DA14-1033 notified the public that Baltimore-Washington (BWT) to transfer control to **NDS** Technologies LLC (**NDS**)... "**NDS**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

Technologies' affiliates **Shoutpoint, Inc.** and **Voicein.com** Corporation offer

**interconnected** Voice over IP services throughout the United States. **NDS** is owned by the

following U.S. citizens: **James Christiano (60 percent) and Patrick Etzel (40 percent)**."

82.     California SOS filings have Certificate of Amendments showing in 2007 names

from -- **NDS** Technologies, LLC >> Shoutpoint, LLC  >> Shoutpoint, Inc.

83.     Shoutpoint Holdings, Inc.  CA SOS  G974682 10/02/2019  CA Corp #:

C3635357, Principal Executive Office: 888 San Clemente Dr. Suite 190, Newport Beach CA

92660 , Mailing Address:  Telecom Professionals Inc.  P.O. Box 720128 Oklahoma City, OK

73172, Officers: CEO, Secretary, CFO  James B. Christiano  Directors James B Christiano

& Patrick Etzel, Agent for Service of Process:  CT Corporation System  -- NO ADDRESS--

84.     SP Licenses, Inc. 2020 FCC **499** is identified as CAP/LEC, **USF: NO**, Holding

Company is Shoutpoint Holdings, Inc., CEO: James Christiano, Chairman: Patrick Etzel,

Jurisdiction: California.

85.     SP Licenses, Inc. for Illinois Telecommunications Filings, 12/15/2016  "In the

Matter of: SP LICENSES, INC.",  Docket No. 16-0348  "APPLICATION FOR A CERTIFICATE

OF LOCAL AND INTEREXCHANGE AUTHORITY <u>TO OPERATE</u> AS A RESALE AND

<u>FACILITIES BASED CARRIER</u> OF TELECOMMUNICATIONS SERVICES THROUGHOUT

THE STATE OF ILLINOIS."  Before: Mr. Glennon P. Dolan, Admin. Law Judge.  James

Christiano gave sworn testimony  5/20 "I'm the president of SP Licenses." 6/8 reviewed

application; 6/11 confirmed signed Verification in the application; 6/18 confirmed he

signed the verification in testimony.

86.     SP Licenses, Inc. was **dissolved** by James Christiano on **02/21**/2020, California

Secretary of State D1563663.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

87.    SP Licenses, Inc. submitted on **03/19**/2020, their 2019 Yearly Report to Illinois Commerce Commission "253423" stating **$0.00.** Verification *"The responsible accounting officer shall verify this report under oath"* was signed and sworn before a notary in CA on **03/16**/2020 by James B. Christiano President of SP Licenses, Inc.

88.    SP Licenses, Inc. on **04/15**/2020 submitted their "Lifeline and Universal Telephone Service Assistance Programs Quarterly Report" to the Illinois Commerce Commission, once again stating that the company has not had **any** applications or customers.

89.    Defendants have marketed their services as an Interconnected VoIP service provider not only to the public, but additionally, they have stated this in their contracts with the educational institutions that are Government funded totaling 100s of millions of dollars.

90.    Starting in at least 2009 and continuing to the present, false and fraudulent information was submitted to the Government and the States in order to justify Defendants receiving funds to which they were not entitled.

91.    Defendants were aware that they are not an Interconnected VoIP service provider and that since 2018 the FCC has denied their applications for E-rate funding.

92.    Defendants are aware that TelWeb is the platform that controls and dials the BILLIONS of RoboCalls that seem to be a never-ending harassment to millions of consumers and the Government.

93.    Defendants have not provided open transparency to the educational institutions, students and parents in reference to how their personal information is actually processed and delivered using their Messenger Voice software.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

94.     This deliberate and ongoing pattern of conduct, set forth herein and supported by the Defendant's own testimony and published documentation, violates state and federal law.

**95.**     Relator therefore brings this action against Infinite Campus, Shoutpoint, Voxology and against all SP Holdings corporations and/or affiliated with any such entities using the TelWeb platform, for its deliberate fraud against the Government and the States.

## SPECIFIC ALLEGATIONS AS TO THE METHODS USED TO PERPETRATE THE FRAUD

96.     The manner in which Defendants defrauded the Government regarding not only the funding received through the E-rate program, but additionally, the contracts that are paid by the school districts directly outside of E-rate.

97.     Defendants have violated the FCA, by overcharging the Government for services that are nearly double of what they charge other customers, failing to report receivables to the Government under one entity, while selling the services under a different entity, and then secreting the overcharges by transferring the funds to their shell corporations.

98.     Defendants further advanced their fraud by charging for services and/or utilities not rendered.

99.     Further, Defendants have violated the FCA by improperly billing the Government as an Interconnected VoIP provider; knowing that their services are not in real time, nor do they provide two-way communication; nor do they provide their customers with customer premises equipment(CPE), all of which are the requirements to even meet the standard definition of being Interconnected VoIP provider.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## SPECIFIC CLAIMS

100.   Shoutpoint, Inc. has submitted false claims for federally funded E-rate program for a total of **1534** submitted requests totaling **$66,933,592** .

101.   Shoutpoint made those 1534 requests knowing that the company did not provide the services that they charged the government for, Plaintiff asserts that Shoutpoint submitted **1534** fraudulent claims to the government through the E-rate program.

102.   The Government relied on Shoutpoint's false and fraudulently misrepresented statements as being factually accurate and truthful, the government then funded **1472** of the 1534 requested claims.

103.   Shoutpoint received **1472** claims that were funded, totaling **$66,624,683.52**

104.   Shoutpoint billed the Government different types of services that the company does not actually provide services for,1491 total requests, with **1443** out of 1491 requests Shoutpoint fraudulently misrepresented for **Interconnected** VoIP Services when Shoutpoint is actually **Non-Interconnected**..

105.   Shoutpoint additionally stated in 43 of those 1491 requests, that Shoutpoint provided services and billed the government for providing "Data Transmission and Fiber Optics", which none of these services were actually provided to the government nor considered lawful transactions because Shoutpoint does not even meet the requirements of being able to be defined as an Interconnected VoIP service provider. .

106.   Appendix B includes all of the 1534 submitted claims, using the SP471 FRN Status 1472 dataset published by C@GO IaS on the FCC Website found at:

https://opendata.usac.org/d/gmm2-44rw

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

107.   As shown in the diagram below, the State of Colorado had the largest amount of funded E-rate claims (483)  for a Total Pre-Discount Cost of $33,911,285.28.



108.   As shown below, the State of Iowa had the 2nd largest amount of funded E-rate claims (262) paid to Shoutpoint for a Total Pre-Discount Cost of  $8,688,822.36

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)



109.   As referenced in the color coded key beside the diagram, the number of funded

claim for the remaining States are: Georgia – 254, Minnesota – 124, Louisiana – 84, (Other)

– 82, Michigan – 53, Wisconsin – 49, and (Kansas, Kentucky, Nebraska, Montana,

California) each having less than 48 claims each.

110.   These values only represent the 1472 funded E-rate claims out of the 1534

requested on FCC Form 471. Appendix B is itemized per each of the 1534 claims to show

the Recipient Entity Number & Name, Application Number, Funding Request Number,

Service Provider Name (Shoutpoint, Inc.), FRN Line Total Pre-Discount Cost.

111.   E-rate is a federally funded program used for providing internet services to

schools and libraries, Shoutpoint Inc. nor the other Defendants provide such services,

Shoutpoint Inc. is a Non-Interconnected VoIP application service.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

112.  Infinite Campus has submitted E-rate requests in the past as well but now sells their services through dealers so that their packages can be bundled with multiple providers like Shoutpoint and their other partnerships.

113.  Infinite Campus is a private company and does not publicly post their annual sales and open contract information.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## ONGOING UNLAWFUL CONTRACTS

114.   Shoutpoint and Infinite Campus have service contracts with the educational institutions that purchase their services. Some of these education institutions will include a copy of their service contract in their public notices for funding requests. Since most of the 1472 requests were for Shoutpoint services, Infinite Campus also would receive funding from the government as well since the Shoutpoint service is provided through the Infinite Campus software platform.

115.   Those contracts were originally signed under false pretenses, and most have not been corrected, even after the Defendants have been denied funding since 2018.

116.   Infinite Campus does not charge each educational institution a flat rate, Infinite Campus uses a sliding scale rate based off of the total number of students per school and/or school district.

117.   Since the Defendants are no longer submitting direct requests for the E-rate program, they now do not have to follow such strict standards and procedures that the program requires from applicants and recipients. For instance, the rates that each Defendant charges each educational institution is not consistent with the same services that are offered to other educational institutions.

118.   Even more concerning is the Defendants are fully aware that they are not providing Telecommunications services, yet their contracts still do not reflect the accurate and truthful identity of the services being provided. For example, the majority of the contracts still identify Shoutpoint as an Interconnected VoIP provider, even after Shoutpoint has filed on their FCC filings that they are Non-Interconnected.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## ONGOING UNLAWFUL CONTRACTS

114.  Shoutpoint and Infinite Campus have service contracts with the educational institutions that purchase their services. Some of these education institutions will include a copy of their service contract in their public notices for funding requests. Since most of the 1472 requests were for Shoutpoint services, Infinite Campus also would receive funding from the government as well since the Shoutpoint service is provided through the Infinite Campus software platform.

115.  Those contracts were originally signed under false pretenses, and most have not been corrected, even after the Defendants have been denied funding since 2018.

116.  Infinite Campus does not charge each educational institution a flat rate, Infinite Campus uses a sliding scale rate based off of the total number of students per school and/or school district.

117.  Since the Defendants are no longer submitting direct requests for the E-rate program, they now do not have to follow such strict standards and procedures that the program requires from applicants and recipients. For instance, the rates that each Defendant charges each educational institution is not consistent with the same services that are offered to other educational institutions.

118.  Even more concerning is the Defendants are fully aware that they are not providing Telecommunications services, yet their contracts still do not reflect the accurate and truthful identity of the services being provided. For example, the majority of the contracts still identify Shoutpoint as an Interconnected VoIP provider, even after Shoutpoint has filed on their FCC filings that they are Non-Interconnected.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

119.   Defendants have created an unfair advantage that lure educational institutions into purchasing contracts for services that are not covered under telecommunications, with some state educational agencies even going as far as to designate Infinite Campus and Shoutpoint as the statewide providers because they provide unique features.

120.   For instance in the State of Nevada, Shoutpoint billed the state $179,400.00 for a 4 – year term. https://purchasing.nv.gov/uploadedFiles/purchasingnvgov/content/Waivers/Documents/200602.pdf

> *2. This product is an add-on service provided by Shoutpoint to Infinite Campus, which is the student information system required to be used by districts and charter schools per NRS 386.650. This add-on product will allow the state-sponsored charter schools to use the personal data stored within Infinite Campus to auto-dial parents in case of emergency, snow delay, crisis response matter, etc.*

> *3. The State Superintendent of Public Instruction has deemed Infinite Campus the student information system for state public schools. This product is the only one authorized to work within the student information system, Infinite Campus; which is required to be used by districts and charter schools per NRS 386.650.*

> *6. 07/01/17 – 06/30/21   $265,305  VoIP emergency notification, Waiver 170401*

> *9. The State Superintendent of Public Instruction has deemed Infinite Campus the student information system for state public schools. This product enhances IC's ability to serve students and families in case of emergency.*

121.   Eastern Suffolk BOCES Service Code 601.610 (.210, .220, .221, .225, .230, .240) totals for Infinite Campus $232,266.34 for the 2020-2021 school year.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

122.   Various contracts over the years with thousands of educational institutions have used a variety of terms but most of which state that Shoutpoint being an "*Interconnected VoIP*" provider.

123.   Since this complaint is being filed in Iowa the following are a few examples taken from some of the contracts with educational institutions located in Iowa.

124.   Ames Community School District 2012 Service Order Addendum, published publicly at https://amesces.files.wordpress.com/2012/05/acsd-school-board-mtg-05-07-12-exhibit-c-3b-addendum-to-add-voice-messenger-to-infinite-campus-agreement.pdf states the following:

> "…Executive Summary: This addendum is to add functionality to Infinite Campus to increase capabilities to communicate in emergencies and during disasters…. Financial Information: Fund: All Funds : Technology-Software, Estimated Cost: $1,000,  Budget Amount: $1,000… This Service Order Addendum (this "Addendum") relates to the Service Order between Shoutpoint, Inc. and Ames Community School District ("Customer") located in 415 Stanton Ave, Ames, Iowa 50014 for Interconnected VoIP Lines with an In Service Date of June 1, 2012. By mutually executing this Addendum, the parties acknowledge that Customer has subscribed for ShoutPoint's SMS (Short Messaging Service), which is bundled with ShoutPoint's Interconnected VoIP…. Set-up Fee: $500… ShoutPoint, Inc., James Christiano, President…"

125.   Cedar Rapids Community School District 2019 Contract can be found publicly on their website at https://www.cr.k12.ia.us/assets/1/24/Agenda_11.12.18.pdf Pages 68-89 of 145  are included in Appendix E for reference.

> p68  Year one cost for ShoutPoint is $19,475. Estimated ongoing cost is $18,975. Year one cost for Infinite Campus (includes conversion, training, and configuration) is $309,307. Total year one cost for both products is $328,782. On-going cost of Infinite Campus is $220,297. Ongoing annual cost for both is projected to be $239,272. The CIC invoice will be paid in four installments (December 2018 -$236,074; April 2019 - $28,080; July 2019 - $36,753; and August 2019- $8,400). The ShoutPoint invoice will be due in full July 2019 -- $19,475.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

p69 Total $309,307… Estimated Future Annual Price (16,283 Students) - CIC $220,297
Estimated Future Annual Price (16,283 Students) - Shoutpoint $ 18,975

**Telecommunications Terms of Use**

THESE TELECOMMUNICATIONS TERMS OF USE (this "Agreement") govern the various services, (the "SP Services"), provided by SHOUTPOINT, INC., a California corporation ("SP"), pursuant to one or more active Service Orders (each a "Service Order") between SP and the subscribing school district on behalf of itself and each of its constituent schools (collectively, the "School District").

1.  SP Services.  SP shall provide one or more of the following services to School District in accordance with one or more Service Orders:

    a.  Telecommunications Services.  Unless set forth differently in an applicable Service Order, the following shall apply to the provisioning and service limitations of SP's interconnected Voice over Internet Protocol ("VoIP") for use over SP's VoIP telecommunications network:

        i.  SP will provision telephone lines and phone numbers in the amount designated in the applicable Service Order.

        ii.  Service Limitations: 911 Service.  As an interconnected VoIP provider Shoutpoint is required to provide 911 service to its customers. However, Shoutpoint's 911 service operates differently than traditional 911. Shoutpoint must transmit all 911 calls, a callback number and the caller's registered physical location to the underlying carrier.  Therefore, Shoutpoint must collect that information from you, and you must update Shoutpoint with any changes.  Further, it takes up to 14 days before the 911 service or any change thereto becomes operational. Remember that our 911 Dialing service will not function in the event of a broadband or power outage or if your broadband, ISP or ShoutPoint service is terminated.  Complete Shoutpoint 911 information is contained in the Service Order and at www.shoutpoint.com/forschools/911service

    b.  Enhanced Services.  SP shall provide School District with non-exclusive and non-transferable licensed access to SP's Telephony Engine which includes an application programming interface accessed through Infinite Campus's SIS that provides a means to create, manage and send telephone messages to students, student parents and legal guardians, school faculty and school district personnel (cumulatively, the "Enhanced Services").

126.   Bondurant-Farrar Community School District (BFCSD) in Iowa paid $17,335 for their 2014-2015 school year for Infinite Campus, Off-Site Campus Cloud, Software Support, Campus Food Service POS, Food Service POS Software Support, On-line Payment Interface to PaySchools, Custom Programming – Standards Based Report Card, on their invoice PSI20050 on 04/21/2014.

127.   BFCSD was invoiced $30,469 on invoice PSI25525 for their 2017-2018 school year after Infinite Campus decided to no longer bundle Support and Updates yearly for their software and now itemize each option. The only difference in options was the recent addition for Campus Online Registration (OLR) for $3,750 and half a year of Shoutpoint's Messenger Voice Software & Support for $401. That is nearly double the annual rate for the same services only two years later.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

| Item/Description | Unit | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| Annual Peopleware Agreement | | | | | |
| July 1, 2017 - June 30, 2018 | | | | | |
| Infinite Campus Base Application | Each | 1 | 1 | 12,552.00 | 12,552.00 |
| Hosting Service - Standard Cloud | Each | 1 | 1 | 1,569.00 | 1,569.00 |
| Food Service POS Software | Each | 1 | 1 | 4,184.00 | 4,184.00 |
| CIC On-Line Payment Interface to RevTrak | Each | 1 | 1 | 300.00 | 300.00 |
| Software Support - 12 Months | Each | 1 | 1 | 7,113.00 | 7,113.00 |
| CIC Custom - Standards Based Report Card | Each | 1 | 1 | 600.00 | 600.00 |
| Campus Online Registration | Each | 1 | 1 | 3,750.00 | 3,750.00 |
| Pro-rated January 1, 2018 - June 30, 2018 | | | | | |
| Messenger Voice Software | Each | 1 | 1 | 314.00 | 314.00 |
| Messenger Voice Support | Each | 1 | 1 | 87.00 | 87.00 |
| Pro-rated May 1, 2018 - June 30, 2018 | | | | | |
| CIC On-Going Learning Plan Package - 12 Month | | | | | |
| Learning Lab Subscription Included | | | | | |

128.   BFCSD invoice has 20-21 renewal rate of $42,804  showing the Shoutpoint
Messenger Voice software billed directly through Infinite Campus on their most recent
invoice PSI30745 on 07/01/2020. OLR is now doubled at $7,500, Messenger Voice is now
$2,236, now there is $2,484 District License, with Software Support totaling $9,067 for
updates. This is nearly a three-fold increase in annual charges within just a few years.

| Item/Description | Unit | Order Qty | Quantity | Unit Price | Total Price |
|---|---|---|---|---|---|
| Annual Peopleware Agreement | | | | | |
| July 1, 2020 - June 30, 2021 | | | | | |
| Infinite Campus Base Application | Each | 1 | 1 | 14,904.00 | 14,904.00 |
| Hosting - Standard Cloud | Each | 1 | 1 | 1,863.00 | 1,863.00 |
| Messenger Voice Software | Each | 1 | 1 | 2,236.00 | 2,236.00 |
| Food Service Software | Each | 1 | 1 | 4,968.00 | 4,968.00 |
| Online Registration | Prime | Each | 1 | 1 | 7,500.00 | 7,500.00 |
| Campus Learning | District License | Each | 1 | 1 | 2,484.00 | 2,484.00 |
| Software Support - 12 Months | Each | 1 | 1 | 9,067.00 | 9,067.00 |
| CIC Online Payments Interface | RevTrak | Each | 1 | 1 | 300.00 | 300.00 |
| Custom Programming - Report Card (13-04) | Each | 1 | 1 | 600.00 | 600.00 |

129.   This rate increase is standard practice with Infinite Campus, they market to the
educational institutions and even include in their original contracts that the first year is
usually higher because of the training expenses, administrators approve the initial
investment and budget for the next few years based off of what they are told in their
original estimate, only to have their rates increased nearly three-fold within a few years.

130.   As clearly shown in recent renewals, and as published on their website as shown
in Paragraph 40 above, *"Campus Messenger with Voice has merged with Shoutpoint..."*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

Since there doesn't seem to be a separate contract with Shoutpoint and Infinite Campus with the educational institutions, Infinite Campus is now marketing and selling the Messenger Voice Software as an Infinite Campus proprietary software in certain regions.

131.   Due to the urgency of other matters related this case, Plaintiff must file this complaint without including the other actions under investigation. Plaintiff reserves the right to file a supplemental filing to be included with this complaint.

132.   Plaintiff preserves and reserves all related matters *ab initio* and will file additional files related to this file after the matters related have been fully investigated. The assertions herein are 100% final, but this is only the first part of what the C@GO IaS Investigation has uncovered.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

Since there doesn't seem to be a separate contract with Shoutpoint and Infinite Campus with the educational institutions, Infinite Campus is now marketing and selling the Messenger Voice Software as an Infinite Campus proprietary software in certain regions.

131.   Due to the urgency of other matters related this case, Plaintiff must file this complaint without including the other actions under investigation. Plaintiff reserves the right to file a supplemental filing to be included with this complaint.

132.   Plaintiff preserves and reserves all related matters *ab initio* and will file additional files related to this file after the matters related have been fully investigated. The assertions herein are 100% final, but this is only the first part of what the C@GO IaS Investigation has uncovered.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## CAUSES OF ACTION

### COUNT I
### (False Claims Act: Presentation of False Claim - 31 U.S.C.§§ 3729-30)

133.   Relator realleges and incorporates by reference the allegations contained in all paragraphs above and appendixes herein.

134.   This Count is brought by Relator in the name of the name of the United States under the *qui tam* provisions of 31 U.S.C. § 3730 for defendants' violation of 31 U.S.C. § 3729.

135.   As a pre-requisite to participating in federally funded programs, including E-rate, Defendants expressly and/or impliedly certified their compliance with applicable statues and regulations.

136.   By virtue of the above-described acts, among others, defendants knowingly defrauded officers, employees or agents of the United States, by purposely withholding monies owed to the United States.

137.   By virtue of the above-described acts, defendants knowingly created, and continue to create, and/or submit false records and statements to obtain payment from the United States for false or fraudulent claims of services not provided.

138.   The amounts of the false or fraudulent claims to the United States were material.

139.   Federally funded programs, including E-rate, have paid what likely amounts to hundreds of millions of dollars in excess for services that were over billed and not refunded in violation of program requirements.

140.   The Government, unaware of the fraud perpetrated on them by the Defendants, paid and likely continue to pay defendants, directly or indirectly, for services which were

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

never rendered and/or were billed at an improper rate. There is no reason to believe that any of the unlawful conduct described above was voluntarily discontinued by Defendants after the Government started denying funding their E-rate request applications.

## COUNT II
### False Claims Act: Presentation of False Claims - 31 U.S.C. § 3729(a)(1)(A)

141.   All of the preceding allegations are incorporated herein.

142.   As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants knowingly, or acting with reckless disregard for the truth, presented and/or caused to be presented false or fraudulent claims for payment or approval in connection with its overbilling and improper retention of funds in violation of 31 U.S.C. § 3729(a)(1)(A).

143.   As a result, The Government made substantial payments on claims and incurred substantial losses related to the submission of E-rate payments, because of the Defendants' wrongful conduct.

144.   Accordingly, the Government has suffered damages in the amount of hundreds of millions of dollars improperly paid claims and is entitled to a civil penalty for each and every violation of the FCA as required by law.

## COUNT III
### False Claims Act: Making or Using a False Record of Statement
### to Cause a Claim to be Paid - 31 U.S.C. § 3729(a)(1)(B)

145.   All of the preceding allegations are incorporated herein.

146.   As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have knowingly, or acting with disregard for the truth, made,

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

used, or caused to be made or used, false records or statements in connection with its submission of invoices, bills, and retention of monetary credits due the Government in violation of 31 U.S.C. § 3729(a)(1)(B).

147.   As a result, The Government made substantial payments on claims and incurred substantial losses related to the submission of E-rate payments, because of the Defendants' wrongful conduct.

148.   Accordingly, the Government has suffered damages in the amount of hundreds of millions of dollars improperly paid claims and is entitled to a civil penalty for each and every violation of the FCA as required by law.

## COUNT IV
### False Claims Act: Conspiracy – 31 U.S.C. § 3729(a)(1)(C)

149.   All of the preceding allegations are incorporated herein.

150.   As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have conspired to make or present false or fraudulent claims and performed on or more acts to effect payment of false or fraudulent claims.

151.   Accordingly, the Government has suffered damages in the amount of hundreds of millions of dollars improperly paid claims and is entitled to a civil penalty for each and every violation of the FCA as required by law.

## COUNT V
### California False Claims and Reporting Act
### Cal. Gov't Code § 12650 *et seq.*

152.   All of the preceding allegations are incorporated herein.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

153.   This Count is brought by Relators in the name of the State of California under the California False Claims and Reporting Act for defendants' violation of that statute.

154.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

155.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

156.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

157.   By reason of the Defendants' acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

158.   Pursuant to Cal. Gov't Code § 12651(a) *et seq.*, the State of California is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

## COUNT VI
### Connecticut False Claims Act
### Conn. Gen. Stat §§ 17 b-301a-17b-301p *et seq.*

159.   All of the preceding allegations are incorporated herein.

160.   This Count is brought by Relators in the name of the State of Connecticut under the Connecticut False Claims Act for defendants' violation of that statute.

161.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Connecticut State Government for payment or approval.

162.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

163.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

164.   By reason of the Defendants' acts, the State of Connecticut has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

165.   Pursuant to Conn. Gen. Stat. §§ 17 b-301a-17b-301p  *et seq.*, the State of Connecticut is entitled to any and all damages, including multiples of actual damages plus

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## COUNT VII
### Georgia Taxpayer Protection False Claims Act
### Ga. Code Ann. § 23-3-120 *et seq.*

166.   All of the preceding allegations are incorporated herein.

167.   This Count is brought by Relators in the name of the State of Georgia under the Georgia Taxpayer Protection False Claims Act and Reporting Act for defendants' violation of that statute.

168.   By virtue of the acts described above, Defendants knowingly defrauded officers, employees or agents of the State of Georgia, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

169.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

170.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

171.   By reason of the Defendants' acts, the State of Georgia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

172.   Pursuant to Ga. Code Ann. § 23-3-120 *et seq.*, the State of Georgia is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**COUNT VIII**
**Illinois False Claims Act**
**810 Ill. Comp Stat. § 740 ILCS 175/1.** *et seq.*

173.   All of the preceding allegations are incorporated herein.

174.   This Count is brought by Relators in the name of the State of Illinois under the Illinois False Claims Act for defendants' violation of that statute.

175.   By virtue of the acts described above, Defendants knowingly defrauded officers, employees or agents of the State of Illinois, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

176.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

177.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

178.   By reason of the Defendants' acts, the State of Illinois has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

179.   Pursuant to 810 Ill. Comp. Stat. § 740 ILCS 175/1. *et seq.*, the State of Illinois is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## COUNT IX
### Iowa False Claims Act
### Iowa Code § 685.1 *et seq.*

180.   All of the preceding allegations are incorporated herein.

181.   This Count is brought by Relators in the name of the State of Iowa under the Iowa False Claims Act for defendants' violation of that statute.

182.   By virtue of the acts described above, Defendants knowingly defrauded officers, employees or agents of the State of Iowa, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

183.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

184.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used,

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

185.   By reason of the Defendants' acts, the State of Iowa has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

186.   Pursuant to Iowa Code § 685.1 *et seq.*, the State of Iowa is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## COUNT X
### Kentucky False Claims Statute Policy
### Ky. Rev. Stat. Ann.  §§ 205.8451-205.8483 *et seq.*

187.   All of the preceding allegations are incorporated herein.

188.   This Count is brought by Relators in the name of the State of Kentucky under the Kentucky False Claims Statute Policy for defendants' violation of that statute.

189.   By virtue of the acts described above, Defendants knowingly defrauded officers, employees or agents of the State of Kentucky, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

190.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

191.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

192.   By reason of the Defendants' acts, the State of Kentucky has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

193.   Pursuant to Ky. Rev. Stat. Ann. §§ 205.8451-205.8483 *et seq.*, the State of Kentucky is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## COUNT XI

### Minnesota False Claims Act
### Minn. Stat. § 15C.01 *et seq.*

194.   All of the preceding allegations are incorporated herein.

195.   This Count is brought by Relators in the name of the State of Minnesota under the Minnesota False Claims Act for defendants' violation of that statute.

196.   By virtue of the acts described above, Defendants knowingly defrauded officers, employees or agents of the State of Minnesota, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

197.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

198.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

199.   By reason of the Defendants' acts, the State of Minnesota has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

200.   Pursuant to Minn. Stat.§ 15C.01 *et seq.*, the State of Minnesota is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### COUNT XII
### Montana False Claims Act
### Mont. Code Ann. § 17-8-401 *et seq.*

201.   All of the preceding allegations are incorporated herein.

202.   This Count is brought by Relators in the name of the State of Montana under the Montana False Claims Act for defendants' violation of that statute.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

203.   By virtue of the acts described above, Defendants knowingly defrauded officers, employees or agents of the State of Montana, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

204.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

205.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

206.   By reason of the Defendants' acts, the State of Montana has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

207.   Pursuant to Mont. Code Ann. § 17-8-401 *et seq.*, the State of Montana is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## COUNT XIII

**New York False Claims Act**
**N.Y. State Fin. Law §§ 187 *et seq.***

FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)

208.   All of the preceding allegations are incorporated herein.

209.   This Count is brought by Relators in the name of the State of New York under the New York False Claims Act for defendants' violation of that statute.

210.   By virtue of the acts described above, Defendants knowingly defrauded officers, employees or agents of the State of New York, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

211.   By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

212.   The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants as Relators are aware the much of the illegal activity described herein is still ongoing.

213.   By reason of the Defendants' acts, the State of New York has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

214.   Pursuant to N.Y. State Fin. Law §§ 187 *et seq.*, the State of New York is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**



**FILED UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)**

Dated: 1/6/21

Respectfully submitted,
The United States of America

By: _____

Christopher Moritz, Relator


**DEMAND FOR BENCH TRIAL**

      Plaintiffs preserved the information *ab initio* prior to disclosure and demands a Bench Trial from this Court on the matters herein that are based off of their direct and independent knowledge of the information and requests that the option of jury trial be preserved for any other claims that may be relevant to these matters, with the exception that any request made on their behalf at this time not prejudice any Plaintiff.

Dated: 1/6/21

Respectfully submitted,

The United States of America on behalf of
its citizens affected by any unlawful actions
of the Defendants.

CHRISTOPHER MORITZ as an individual citizen of
The United States of America.

CHRISTOPHER MORITZ as the biological father and
legal guardian proceeding on behalf of the minor
children of the C@GO DOE family collectively.

CHRISTOPHER MORITZ as the representing agent on
behalf of the C@GO IaS Group.

By: _____

CHRISTOPHER MORITZ

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America & states CA, CT, GA, IL, IA, KY, MN, MT, NY | Shoutpoint Infinite Campus Inc, Holdings Fr., Voxology Carrier Services Inc Shoutpoint Inc, Voxology Inc, |
| **(b)** County of Residence of First Listed Plaintiff _____ *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant Orange County CA *(IN U.S. PLAINTIFF CASES ONLY)* NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Christopher Moritz  515-771-9443 1007 W 1st St Ankeny IA 50023 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☒ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 70,000,000.00 within not including fees

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE 01/05/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____